**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry MARTIN and Clifford Price,**
**Defendants–Appellants.**

**Nos. 99–2173, 00–1066.**

United States Court of Appeals,
Sixth Circuit.

Dec. 18, 2001.

Before COLE and SUHRHEINRICH, Circuit Judges; and COLLIER, District Judge.[*]

COLLIER, District Judge.

On May 27, 1998, Defendant–Appellant Larry Martin was indicted by a grand jury sitting in the Eastern District of Michigan

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

for possession with intent to distribute marijuana, maintaining a continuing criminal enterprise, and laundering money. In January 1999 the case proceeded to trial in front of a jury with Judge Gerald Rosen presiding. The jury convicted Martin on all counts, and he was sentenced by the district court to a 293–month term of imprisonment. He appeals his conviction and sentence to this Court.

On June 16, 1998, Appellant–Defendant Clifford Price was indicted for conspiracy to distribute marijuana for his role in Martin's drug operation. Price pleaded guilty to the charge and was sentenced on October 4, 1999. At the sentencing hearing the district court applied a sentence enhancement for obstruction of justice for statements made by Price at his suppression hearing. Price now appeals the application of the enhancement.

For the reasons set forth below, we AFFIRM Martin's conviction and sentence and Price's sentence.

## I. BACKGROUND

Larry Martin and co-conspirator, Kwesi Karamoko, operated a large marijuana growing and distribution organization in the Detroit metropolitan area over a 12–year period. Karamoko would purchase real estate to be used for the growing, storing, and distribution of the marijuana. Martin headed the manufacturing and distribution of the marijuana. To facilitate the enterprise Martin and Karamoko formed the Sankofa Corporation which they then used to launder money and purchase and lease real estate for the purposes of their criminal enterprise.

On May 24, 1995, as part of the government's investigation of the criminal enterprise, police officers followed Martin to one of the buildings used in the marijuana operation. They saw him enter with empty hands and leave with a large trash bag.

The officers had seen Martin do this on several occasions and decided this time to follow him. While pursuing Martin on the expressway, the officers saw Martin weaving between lanes. They also saw him lighting what they thought was a marijuana cigarette. The officers pulled Martin over and arrested him. They found several pounds of marijuana in the car and based on this evidence obtained search warrants for other buildings that were part of the criminal enterprise.

In executing a warrant for one of the buildings involved in the operation, police officers encountered Clifford Price. Price acted as a caretaker for the multilevel apartment building. The building had been converted into a massive indoor marijuana growing site. Price lived in one of the apartments and was responsible for maintaining the elaborate lighting and watering system necessary for the marijuana growing operation. When the police conducted the search, they found schematic drawings of the electric system in Price's apartment. Price was arrested at the time of the search.

Price moved to have inculpatory statements he made at the time of his arrest suppressed. He claimed he did not receive warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), until he reached the police station. Two police officers and Price testified at the suppression hearing. The officers testified that while executing the search warrant, Price stated he was a master electrician and he had wired the apartment building for the "marijuana factory." Both officers testified Price was advised of his *Miranda* rights immediately after he was arrested. Price testified after the officers and denied he had been advised of his *Miranda* rights until he had been transported to the station. He also

denied telling the officers he was a master electrician or that he had been involved in wiring for the marijuana growing operation.

The district court denied Price's motion to suppress because it did not find Price's statements credible. Particularly he found Price's testimony less than credible concerning his role in the wiring of the building. At the sentencing hearing, the district court relied on Price's testimony at the suppression hearing that contradicted the statements of the arresting officers in deciding to give Price a two point enhancement for obstruction of justice.

## II. DISCUSSION

### A. Martin's Appeal

#### 1. Apprendi Error

■ In his first argument on appeal, Martin contends his conviction must be vacated in light of *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because the Government did not include drug amounts in Martin's indictment and the jury made no findings on the issue of drug quantity. Martin, however, did not object to the faulty jury instruction and so we review for plain error only. In order to establish plain error a defendant must establish (1) an error, (2) that is plain, and (3) that affects substantial rights. *United States v. Page,* 232 F.3d 536, 543 (6th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1389, 149 L.Ed.2d 312 (2001).

The Government concedes the first two elements of the plain error standard are met in light of *Apprendi.* It contends, however, the third element is not met because Martin's total sentence would be the same as the district court originally imposed, regardless of the error.

■ The district court sentenced Martin to a 293–month term of imprisonment for his drug conviction. The length of the sentence was determined by the drug quantity ascribed by the district court to Martin under a preponderance of the evidence standard. Martin was also sentenced to several concurrent 240–month terms of imprisonment for his money laundering counts. *See* 18 U.S.C. § 1956. Under United States Sentencing Guidelines, *Guidelines Manual,* § 5G1.2(d) (Nov. 1998), a district court is required to impose consecutive sentences to the extent necessary to achieve the total punishment. United States Sentencing Guidelines, *Guidelines Manual,* § 5G1.2(d) (Nov. 1998). As we recently explained in an unpublished decision " 'total punishment' [is] the maximum sentence under the guidelines for the quantity of drugs determined by the judge by a preponderance of the evidence." *United States v. Alcorn,* No. 99–6565, 2001 WL 1132681, at \*3 (6th Cir. Sept. 4, 2001). Thus, a defendant's sentences would be consecutive up to the maximum sentence under the guidelines for the quantity of drugs ascribed to the defendant.

In this case the district court had the authority under the Sentencing Guidelines to sentence Martin consecutively up to the upper limit of the drug amount guideline range. Absent the error, Martin's sentences would have been the same as that which was imposed. Accordingly, a remand is not required *Page,* 232 F.3d at 545.

#### 2. Lack of Probable Cause or Reasonable Suspicion

Next Martin argues the district court erred in denying his motion to suppress because the officers lacked both probable cause and reasonable suspicion to stop

Martin on May 24, 1995. Thus, all evidence seized as a result of his arrest and the resulting search warrants should have been suppressed.

The district court's factual findings are reviewed for clear error, and its determination of whether the facts amount to reasonable suspicion or probable cause is reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). When reviewing the denial of a motion to suppress, we consider "the evidence in the light most favorable to the government." *United States v. Caicedo*, 85 F.3d 1184, 1188 (6th Cir.1996).

On the evening of May 24, 1995, Detroit police officers were surveilling Martin from their car. They saw him enter an apartment building empty handed and leave with what appeared to be a large black garbage bag. The officers followed Martin from the apartment along a stretch of highway. He was in the express lanes and they were in the normal lane of traffic. There was a four foot wall separating the lanes.

Martin argues the officers lacked probable cause that a traffic violation occurred. He explains "[t]he concrete divider between the express and local lanes would appear to have made it difficult (if not impossible) for the officers to make the observation(s) they claim to have made. Similarly, particularly given that it was nearly midnight at the time, it is hard to imagine how the officers could have made the observation they did regarding Defendant's alleged use of marijuana at the time." Appellants Br. at 20.

As the Government points out, however, the district court credited the officers testimony that Martin was drifting and swerving in traffic consistent with someone who was under the influence of drugs or alcohol, and appeared to be smoking a marijuana cigarette. Martin has not demonstrated in any way how these factual findings are clearly erroneous, and our review of the transcript of the evidentiary hearing reveals no such error. Further, Martin does not dispute that if the facts alleged were true they would constitute grounds for his arrest. Accordingly, Martin's argument must fail.

### 3. Continuing Criminal Enterprise Jury Instruction

Third, Martin contends the district court should have instructed the jury to make findings of specific offenses before convicting Martin of a Continuing Criminal Enterprise (CCE) offense. The Government agrees that the jury instructions were deficient in light of the Supreme Court's post trial ruling in *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). *Richardson* requires the jury be instructed they must unanimously agree on the same three predicate offenses to convict on a CCE count under 21 U.S.C. § 848. The district court did not instruct the jury they had to be unanimous as to which of Martin's alleged predicate offenses they relied upon to support his conviction for the CCE charge. Martin objected to this omission at his sentencing in his request for a new trial. Rather than grant him a new trial, the district court vacated the jury verdict on the CCE count, and did not sentence him on that count. Martin contends the district court should have granted him a new trial instead of vacating the jury's verdict on the CCE count.

Martin's argument is moot. *Cf. United States v. Martinez*, 981 F.2d 867, 874 (6th Cir.1992) (challenge to jury instruction on conspiracy count was moot because the defendant was not convicted on that count). There is no reason to think the remedy chosen by Judge Rosen was insufficient. *United States v. Richardson*, 195 F.3d 316 (7th Cir.1999) (on remand from Supreme Court in original *Richardson*

case, the United States Court of Appeals for the Seventh Circuit remanded the case to district court to dismiss CCE count because the prisoner was already serving a life sentence on other charges). Furthermore, Martin has not established any prejudice that might warrant a new trial because all of the evidence which supported the CCE count was admissible to prove the other drug counts at the trial.

## B. Price's Appeal

Price contends the district court erred in imposing an enhancement for obstruction of justice at the sentencing hearing. He argues the district court failed to make the appropriate factual findings that he committed perjury when the court did not specify what statements Price made that were untrue. He further contends the statements he made during the suppression hearing were not material to the issue before the court at the suppression hearing—whether the police officers properly gave him the *Miranda* warnings.

### 1. Specificity Requirement

 The obstruction of justice guideline provides "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (1998). In the obstruction enhancement cases for perjury we have enumerated two requirements a district court must perform. First, it must identify those particular portions of the defendant's testimony it considers to be perjurious. Second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Sassanelli*, 118 F.3d 495 (6th Cir.1997). As we stated in *Spears*, "the sentencing judge must identify for the record at least some

specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir.1995).

 The district court sufficiently identified Price's perjurious testimony, namely Price's denials that he told the arresting officers he was involved in the wiring and lighting of the marijuana growing facility. The Court made it clear at the sentencing hearing it was relying on the details from the suppression hearing. We have no difficulty in determining what statements the district court found to be perjurious because of this reference. The district court found Price's testimony at the suppression hearing not credible on the basis of the testimony, the evidence submitted and the lighting schematic. Although the district court did not use the term "perjury" and did not list in question and answer form the statements it found perjurious, the record is clear that the district court found Price's specific denials he had admitted to the arresting officers his involvement in the wiring of the marijuana growing facility perjurious. *United States v. Clark*, 982 F.2d 965, 970 (6th Cir.1993). With regards to the specificity requirement, the district court did not err.

### 2. Materiality

 In *Spears* we explained "the judge must, at least briefly, explain why the intentional perjury was material." *Spears*, 49 F.3d at 1143. Price argues the statements the district court relied upon to impose the enhancement did not meet the requirement of materiality.

Under the guideline, "material" means a statement "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6). The issue at the suppression hearing was whether Price had received his *Miranda* warning which would in turn determine

whether statements he made were admissible. The officers testified Price admitted to them he wired the building where the marijuana was being grown. They also testified they gave Price his *Miranda* warnings at the arrest location. Price took the stand and denied both of these facts, attacking the credibility of both officers. The officers' credibility was the central issue before the court in determining what took place during Price's arrest and whether his statements should be suppressed. Thus, Price's statements attacking the credibility of the officers would be material to the issue before the court. Price's argument is without merit.

## CONCLUSION

For all the foregoing reasons, we AFFIRM Martin's conviction and sentence and Price's sentence.