JORDAN, Circuit Judge.
Ace Patterson, a Florida prisoner, appeals the district court’s dismissal of his habeas corpus petition, filed pursuant to 28 U.S.C. § 2254, as second or successive under 28 U.S.C. § 2244(b). As we explain, under our prior decision in Insignares v. Secretary, 755 F.3d 1273 (11th Cir.2014), Mr. Patterson’s § 2254 petition is not second or successive within the meaning of § 2244(b). We therefore reverse.
I
In 1998, a Florida jury convicted Mr. Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery. The trial court sentenced Mr. Patterson to 311 months of imprisonment for the burglary and aggravated kidnapping offenses, and consecutive terms of life imprisonment plus chemical castration for the sexual battery offense. His convictions and sentences were affirmed on direct appeal.
Approximately nine years later, in 2007, Mr. Patterson filed a habeas corpus petition pursuant to § 2254. The district court dismissed it as untimely that same year.
After that dismissal, Mr. Patterson filed a motion to correct an illegal sentence with the state trial court under Florida Rule of Criminal Procedure 3.800(a). Mr. Patterson argued in his motion that his sentence of chemical castration was illegal because the trial court had not complied with the statutory requirements of the chemical castration statute, Fla. Stat. § 794.0235. According to Mr. Patterson, the trial court failed to consult a medical expert to determine whether he was an appropriate candidate for chemical castration and failed to specify the duration of the treatment. See Houston v. State, 852 So.2d 425, 428 (Fla. 5th DCA 2003) (explaining that appointing an expert and specifying the duration of treatment are “mandatory requirements” of the chemical castration statute).
In its response, the State conceded the facial sufficiency of the motion and did not oppose Mr. Patterson’s request to correct the illegal sentence given the consecutive life terms that had been imposed. On December 14, 2009, the state trial court entered an order granting Mr. Patterson’s Rule 3.800 motion. The order repeated all of the sentences initially imposed on Mr. Patterson, and stated that Mr. Patterson would “not have to undergo [mjedroxypro-gesterone [a]cetate (MPA) injection, also known as.‘Chemical, Castration’ as previ *887 ously ordered by the Court at his sentencing in the above styled matter.”
Following entry of the new order, Mr. Patterson filed a new § 2254 habeas corpus petition. The district court dismissed this petition as “second or successive” under § 2244(b)(1) because Mr. Patterson had previously filed a habeas corpus petition that had been dismissed as untimely. We granted Mr. Patterson a certificate of appealability to determine whether the state court order deleting chemical castration from his sentence resulted in a new judgment, such that his current habeas corpus petition is not second or successive.
II
Whether a petition for a writ of habeas corpus is second or successive is a question we consider de novo. See Stewart v. United States, 646 F.3d 856, 858 (11th Cir.2011). Generally, subject to exceptions not relevant here, claims presented in a second or successive § 2254 petition are subject to dismissal. See Insignares, 755 F.3d at 1278 n. 4 (“Subject to two exceptions, § 2244(b) provides that ‘[a] claim presented in a second or successive habeas corpus application under section 2254 ... shall be dismissed.’ ”). Unfortunately, § 2244(b) does not explain what constitutes a second or successive habeas petition. See id. at 1278.
The Supreme Court stepped into the statutory void in Magwood v. Patterson, 561 U.S. 320, 332-33, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), and held that “the phrase ‘second or successive’ must be interpreted with respect to the judgment challenged.” The Court ruled that “where ... there is a new judgment intervening between two habeas petitions, an application challenging the resulting new judgment is not second or successive.” Id. at 341, 130 S.Ct. 2788. Put more simply, “the existence of a new judgment is disposi-tive.” Id. at 338, 130 S.Ct. 2788. And the judgment' is what “authorizes the prisoner’s confinement.” Id. at 332, 130 S.Ct. 2788.
Mr. Patterson contends that his current § 2254 petition is not second or successive because it is his first petition challenging the new judgment generated by the order deleting chemical castration from his original sentence. He argues that because the state trial court substantively amended his sentence to remove the punishment of chemical castration, he is now in custody pursuant to a new judgment. He contends, therefore, that his current habeas corpus petition challenging this new judgment is not second or successive under Magwood. Based on our prior decision in Insignares, we agree with Mr. Patterson.
A
A Florida jury convicted Mr. Insignares of attempted first-degree murder with, a firearm, resulting in a sentence of 40 years of imprisonment, including a 20-year mandatory minimum; criminal mischief, resulting in a concurrent sentence of five years of imprisonment; and discharging a firearm in public, resulting in a concurrent sentence of one year of imprisonment. See Insignares, 755 F.3d at 1276. The trial-court later reduced Mr. Insignares’ sentence for attempted first-degree murder from 40 years to 27 years, and a state appellate court set aside the criminal mischief conviction. That left Mr. Insignares with a 27-year sentence (including a 20-year mandatory minimum) for his attempted murder conviction, and a concurrent one-year sentence for his discharge of a firearm conviction. See id.
In 2007, following state post-conviction proceedings, Mr. Insignares filed his first § 2254 habeas petition. That petition was *888 dismissed by the district court as untimely, and we dismissed Mr. Insignares’ appeal from that dismissal for failure to prosecute. See id. at 1277. After that dismissal, Mr. Insignares — like Mr. Patterson here — filed a motion with the state trial court to correct an illegal sentence under Rule 3.800. See id. In 2009, the state trial court granted that motion and issued a new judgment reducing Mr. Insignares’ mandatory-minimum sentence for the attempted-murder conviction from 20 years to 10 years, and otherwise leaving his convictions and remaining sentences intact. See id: As a result of the state trial court’s Rule 3.800 order Mr. Insignares had a shorter mandatory minimum sentence, but his total custodial sentence of 27 years remained the same.
In 2011, following the entry of a corrected sentence and new judgment by the state trial court, Mr. Insignares — like Mr. Patterson here — filed another § 2254 ha-beas petition in the district court. See id. Mr. Insignares — like Mr. Patterson here— asserted claims related to his initial convictions, and did not contend that there was anything wrong with the new judgment itself. See id. (“Notably, [Mr. Insignares] alleged the same errors in his 2007 [first habeas] petition as he has in his second habeas petition.”).
Applying the Supreme Court’s decision in Magwood, the district court determined that Mr. Insignares’ new habeas corpus petition was not second or successive, and denied the petition on the merits. See id. On appeal, the State argued that, “[because [Mr.] Insignares had filed a federal habeas petition in 2007 challenging his conviction and raising the same issues as [in] his 2011 petition,” the later petition was second or successive and the district court did not have jurisdiction to adjudicate it. See id. at 1278. We rejected the State’s argument.
Relying on Ferreira v. Secretary, 494 F.3d 1286, 1288 (11th Cir.2007), we affirmed the district court’s determination that Mr. Insignares’. new habeas corpus petition was not “second or successive” under Magwood. We held that “[t]he 2009 resentencing by the state judge resulted in a new judgment, and [Mr. Insignares’ 2011 petition was the] first federal challenge to that 2009 judgment.” Insignares, 755 F.3d at 1281. And we did so even though the new judgment was beneficial to Mr. Insignares and even though the claims asserted by Mr. Insignares challenged his initial convictions and not the new judgment. See id. at 1277.
We declined to follow the Seventh Circuit’s decision in Suggs v. United States, 705 F.3d 279, 282-284 (7th Cir.2013), which concluded that a second motion to vacate is “second or successive,” even where the defendant has been resentenced, if the motion attacks the underlying conviction and not the new sentence. We phrased our holding as follows: “[W]hen a habeas petition is the first to challenge a new judgment, it is not ‘second or successive’ regardless of whether its claims challenge the sentence or the underlying conviction.” Id. at 1281. We then addressed Mr. Insig-nares’ claims (several claims of ineffective assistance of counsel, a claim that a juror had been sleeping at trial, and a claim of cumulative error) and rejected them on the merits, even though the first habeas petition asserting those same claims had been previously dismissed as untimely. See id. at 1282-84.
A “basic principle of justice [is] that like cases should be decided alike,” Martin v. Franklin Capital Corp., 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005), and we find no meaningful distinction between Mr. Insignares’ case and Mr. Patterson’s case. Just as Mr. Insignares’ initial § 2254 petition was dismissed for untimeli *889 ness, so too was Mr. Patterson’s initial § 2254 petition. Just as Mr. Insignares filed a motion with the state trial court to correct his illegal sentence under Rule 3.800, so too did Mr. Patterson. Just as the state trial court granted Mr. Insig-nares’ motion to correct, substantively amending a part of the sentence but leaving Mr. Insignares’ remaining convictions and total custodial sentences intact, so too did the state trial court here grant Mr. Patterson’s motion to correct, substantively vacating a portion of the sentence but leaving Mr. Patterson’s remaining convictions and total custodial sentences intact. Just as Mr. Insignares benefitted from the new sentence, so too did Mr. Patterson benefit from the new sentence. And just as the second habeas petition filed by Mr. Insignares asserted claims related to his underlying convictions (and not to the new sentence), so too did the second habeas petition filed by Mr. Patterson assert claims related to his underlying convictions (and not to the new sentence). As in Insignares, the state trial court’s grant of Mr. Patterson’s Rule 3.800 motion and its vacatur of the punishment of chemical castration from the original sentence constituted a resentencing that resulted in a new judgment, even though Mr. Patterson’s total custodial term (life in prison) remained the same, and even though the current habeas corpus petition challenges only the underlying convictions.
B
The State contends that Insignares is distinguishable for two reasons. We are not persuaded.
First, the State argues that, unlike the situation in Insignares, Mr. Patterson was not resentenced. Instead, the state trial court merely barred the Department of Corrections from carrying out a portion of Mr. Patterson’s initial judgment and sentence. We do not see the distinction.
Initially, Mr. Patterson’s sentence consisted of a term of 311 months of imprisonment for his burglary and aggravated kidnapping convictions, as well as consecutive terms of life imprisonment plus chemical castration for his sexual battery convictions. The total sentence not only authorized the Department of Corrections to incarcerate Mr. Patterson, but also, at its discretion, to chemically castrate him by administering MPA during his term of incarceration. See Fla. Stat. § 794.0235(2)(b) (“In all cases involving defendants sentenced to a period of incarceration, the administration of treatment with medroxyprogesterone acetate (MPA) shall commence not later than one week prior to the defendant’s release from prison or other institution.”). The State concedes in its brief that the administration of MPA “is a part of the defendant’s ... sentence,” see Appellee’s Brief at 27, and we accept that concession because it is consistent with Florida law. Indeed, Tran v. State, 965 So.2d 226, 229 (Fla. 4th DCA 2007), holds that chemical castration is not for medical treatment and constitutes “part of the defendant’s punishment and sentence.”
Following entry of the state trial court’s Rule 3.800 order vacating the chemical castration portion of Mr. Patterson’s sentence, the Department of Corrections was no longer authorized to chemically castrate him through the administration of MPA. It was, in other words, not able to carry out one of the punitive measures permitted by Florida law and initially imposed by the trial court at sentencing. The Rule 3.800 order, together with the 1998 judgment, are what currently “authoriz[e] [Mr. Patterson’s] confinement.” Magwood, 561 U.S. at 332,130 S.Ct. 2788.
We fail to understand how an order vacating the punishment of chemical cas *890 tration — a recognized part of Mr. Patterson’s original sentence under Florida law — can be considered anything but a resentencing. Indeed, the State admitted at oral argument that, in implementing the sentence, the Department of Corrections must abide by the trial court’s Rule 3.800 order and therefore cannot administer MPA to Mr. Patterson. Cf. Murphy v. United States, 634 F.3d 1303, 1314 (11th Cir.2011) (stating that a resentencing occurs “where an old sentence is invalidated and replaced with a new one”). Accordingly, we are not swayed by the State’s first argument. See H. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 758 (1982) (“the jurisprudential rule of like treatment demands consistency not only between cases that are precisely alike but among those where the differences are not significant”).
Second, the State says that Insignares is distinguishable because in that case, after granting the Rule 3.800 motion, the state trial court entered a “corrected sentence and new judgment.” Insignares, 755 F.3d at 1277. The State asserts that here there is only one judgment in the record — the one rendered in 1998 — and it contends that, because the state trial court did not enter a new judgment in Mr. Patterson’s case following its grant of Rule 3.800 relief, Insignares doés not apply.
Again, we are not convinced. For starters, Florida law requires only that a “judgment of guilty” or “not guilty ... be rendered ... in writing, signed by the judge, filed, and recorded.” Fla. R.Crim. P. 3.670. With regards to a defendant’s sentence, Florida Rule of Criminal Procedure 3.700 requires only that “[ejvery sentence ... be pronounced in open court ... [and][t]he final disposition of every case [ ] be entered in the minutes in courts which minutes are kept and ... docketed in courts that do not maintain minutes.” Florida Rule of Criminal Procedure 3.986 provides a sample “uniform Judgment and Sentence form,” but “[njeither Rule 3.986 nor any other rule makes the completion and filing of the authorized form of judgment and sentence a condition to a valid sentence.” Flowers v. State, 351 So.2d 387, 389 (Fla. 1st DCA 1977). Indeed, under Florida law even the requirement that a judgment of guilt be rendered in writing “should not be read as suspending the effect of the sentence pronounced in open court until the paper is filed.” Id. In other words, under Florida law a sentencing (or resentencing) order need not be documented in a formal separate judgment to be effective. Thus, the mere fact that the state trial court here did not, in addition to issuing its Rule 3.800 order, enter a new judgment does not affect the validity of its resentencing of Mr. Patterson, and it is not determinative of whether a new judgment exists under Magwood and Insignares.[1]
To accept the State’s.argument would be to make the form that a new judgment takes — rather than its substance — disposi-tive. If we were to accept the State’s view — that it is the entry of a new separate paper judgment (and only the entry of *891 a new separate paper judgment) that results in a “new judgment” under Magwood and Insignares — then a state trial court’s correction of a simple clerical error through the entry of a new separate paper judgment (for example, replacing “500 months in prison” with “50 months in prison” to correct a typographical error) would necessarily result in a new judgment giving a defendant a new opportunity to seek federal habeas relief. We have already rejected the notion that the mere issuance of a revised paper judgment under such circumstances necessarily constitutes a re-sentencing. See United States v. Portillo, 363 F.3d 1161, 1165 (11th Cir.2004) (holding that the correction of a clerical error that is “minor and mechanical in nature.” in a sentence under Federal Rule of Criminal Procedure 36 does not result in the entry of a new criminal “judgment” under Federal Rule of Appellate Procedure 4(b)(1)(A)).
We do not think the Supreme Court intended for Magwood to extend that far, and thereby conflict with the central purpose behind AEDPA’s restrictions on the filing of second or successive petitions — that of “ensur[ing] greater finality of state and federal court judgments in criminal eases[.]” Gonzalez v. Secretary, 366 F.3d 1253, 1269 (11th Cir.2004), aff'd on other grounds sub nom. Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005). Where state court orders are concerned, principles of federalism and comity counsel against federal courts insisting that a state trial court use a particular method (or piece of paper) to render a criminal judgment. Given the potential variety of forms of criminal judgments available in state criminal justice systems, a federal rule for determining successiveness should and must be based on the substance, and not the merely the form, of a trial court’s sentencing order.
For all of these reasons, we believe the appropriate approach is to focus on the legal error corrected by, and the substantive effect of, the state trial court’s Rule 3.800 order. As we emphasized in Insig-nares, “courts must look to the judgment challenged to determine whether a petition is second or successive.” Insignares, 755 F.3d at 1278 (emphasis in original). And we have previously explained, in the context of applying AEDPA’s one-year statute of limitations, that “the judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner’s current detention.” Fer-reira, 494 F.3d at 1292.
Where a state court corrects a legal error in an initial sentence, and imposes a new sentence that is substantively different than the one originally imposed, there is a new judgment under Magwood and Insignares. Here, the initial imposition of the punishment of chemical castration was erroneous under Florida law, and the subsequent removal of that punishment substantively altered the punitive terms of Mr. Patterson’s custody. So the original 1998 judgment, standing alone, no longer accounts for the authority of the Department of Corrections to detain and exert control over Mr. Patterson. Instead, as the State admits, one must now look to the original 1998 judgment, together with the 2009 order removing the punishment of chemical castration, in order to determine Mr. Patterson’s present and legally authorized sentence. See Magwood, 561 U.S. at 332, 130 S.Ct. 2788 (“A § 2254 petitioner is applying for something: His petition ‘seeks invalidation (in whole or in part) of the judgment authorizing the prisoner’s confinement.’ ”). Cf. B. Garner, Garner’s Dictionary of Legal Usage 495 (3d ed.2011) (defining an American judgment as “the final decisive act of a court in defining the rights of the parties”). Be *892 cause this is Mr. Patterson’s first § 2254 petition challenging this new judgment, we conclude that it is not “second or successive” under § 2244(b).
C
The Fifth Circuit’s decision in In re Lampton, 667 F.3d 585 (5th Cir.2012), is not to the contrary. Mr. Lampton, a federal prisoner, was convicted by a jury of, among other things, one count of conspiracy to distribute heroin and marijuana and one count of engaging in a continuing criminal enterprise. The district court sentenced him to concurrent life sentences for each conviction. The district court, however, later granted in part Mr. Lamp-ton’s motion to vacate under 28 U.S.C. § 2255, ruling that his convictions violated the constitutional prohibition against double jeopardy. The district court vacated Mr. Lampton’s conspiracy conviction and sentence, leaving in place the continuing-criminal-enterprise conviction and the life sentence for that conviction.
Mr. Lampton then filed a second § 2255 motion, arguing that under Magwood his motion was not second or successive because it was his first § 2255 motion challenging his amended judgment. He argued that, because the district court granted his first § 2255 motion, he was now in custody pursuant to a new, amended judgment and this was his first § 2255 motion challenging that- new, amended judgment. The Fifth Circuit disagreed with Mr. Lampton and held that, where a first collateral attack results in the vacatur of a conviction and sentence for a lesser-included offense, which has the same concurrent sentence as the conviction for the greater offense (which remains valid), the granting of the first collateral attack does not yield a new judgment.
The Fifth Circuit reached this result, in part, because despite the amended judgment, Mr. Lampton still had to serve a life sentence on the continuing-criminal-enterprise conviction that was imposed by the original judgment entered by the district court. Mr. Lampton’s punishment, in other words, did not change. “[T]he rule announced in Magwood applies only when a new sentence was imposed as a result of the first habeas proceeding.” Id. at 589. Because no new sentence was imposed as a result of Mr. Lampton’s initial § 2255 motion, the Fifth Circuit concluded that his prior § 2255 petition did not yield a new judgment of conviction. “Whether a new judgment has intervened between two habeas petitions, such that the second petition can be filed without th[e] [cjourt’s permission, depends on whether a new sentence has been imposed.” Id. at 589 (citing Burton v. Stewart, 549 U.S. 147, 156, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (“Final judgment in a criminal case means sentence. The sentence is the judgment.”)). In Mr. Lampton’s case, the “sentence on the [continuing-criminal-enterprise] conviction remained intact after the initial § 2255 proceeding was completed.” Id. at 589. Because “no new sentence was imposed[,] [t]he less fundamental change made to [Mr.] Lampton’s judgment of conviction [was] not enough to allow him to bypass AEDPA’s restrictions on piecemeal habeas litigation.” Id. at 590.[2]
*893 Here, unlike the situation in Lampton, the state trial court’s Rule 3.800 order substantively changed Mr. Patterson’s sentence. The order eliminated the punishment of chemical castration from the initial sentence, and as a result a new sentence was imposed.
Notably, the Fifth Circuit in Lampton cited with approval its prior order in In re Barnes, No. 11-30319 (5th Cir. June 23, 2011) (per curiam). In that ease, after his first habeas petition was dismissed on limitations grounds, the petitioner later filed a motion in state court to correct his life sentence. The state court granted the motion and amended the petitioner’s life sentence to a 99-year sentence. The Fifth Circuit held that the petitioner could file another § 2254 petition without obtaining prior authorization under § 2244 “because a new sentence constitutes a new judgment.” Lampton, 667 F.3d at 588 (citing In re Barnes, slip opinion at 3).
Our holding is consistent with the Fifth Circuit’s reasoning in Lampton, in that we too conclude that it is Mr. Patterson’s new sentence — a sentence that no longer contains a previously imposed punishment— which yields a new judgment. As a result of the state trial court’s Rule 3.800 order, the Department of Corrections can no longer chemically castrate Mr. Patterson. That is, it cannot carry out a punishment that it was previously legally authorized to carry out while Mr. Patterson was in its custody. This substantive alteration of the punitive terms of Mr. Patterson’s original judgment resulted in a new sentence, which yielded a new judgment.[3]
D
We respect the passionate dissenting views of our colleague, Judge William Pryor. Yet we suspect that Judge Pryor’s real disagreement is with Magwood and our prior decision in Insignares.
Judge Pryor, for example, complains that our decision allows a state prisoner to raise, in a subsequent federal habeas petition, claims that he failed to assert in his first petition. That complaint, however, should be addressed to the Supreme Court. The Justices who dissented in Magwood pointed out that the majority was permitting the exact same thing that Judge Pryor now bemoans. See Mag-wood, 561 U.S. at 343-44, 130 S.Ct. 2788 (Kennedy, J., dissenting) (“The Court today decides that a state prisoner who succeeds in his first federal habeas on a discreet sentencing claim may later file a second petition raising numerous previously unraised claims, even if that petition is an abuse of the writ of habeas corpus.”). It is not for us to overhaul Supreme Court precedent. See King v. Morgan, 807 F.3d 154, 159 (6th Cir.2015) (explaining that in Magwood the majority ruled in favor of the habeas petitioner notwithstanding the “animating” purpose of AEDPA — “to cut back on successive habeas challenges”).
There is also an aspect of Judge Pryor’s dissent that we do not fully understand. Judge Pryor, like the State, says that In-signares does not control because in that case the state trial court entered an amended judgment after issuing its Rule *894 3.800 order. According to Judge Pryor, that separate judgment — -which is missing here — makes all the difference, because formalism should reign supreme (even though he acknowledges that under Florida law a separate written judgment is not necessary). But Judge Pryor then apparently endorses an opinion which holds that an amended judgment reducing a sentence under 18 U.S.C. § 3582(c) due to a retroactive guideline amendment is not a new judgment under Magwood. See White v. United States, 745 F.3d 834, 836-37 (7th Cir.2014). So it is unclear whether formalism is the guiding principle, and we are left to guess whether it is a piece of paper, or a vacatur, or a substantive change (or something else altogether) that matters.
If Judge Pryor thinks that White is correctly decided, then his characterization of its rationale — that there is no new judgment unless the original judgment is vacated — fits here, for the state trial court’s Rule 3.800 order in Mr. Patterson’s case set aside, i.e., vacated, the punishment of chemical castration mandated and authorized by the 1998 judgment. Florida courts have long held and recognized that an order granting a Rule 3.800 motion is effective (and appealable) if it imposes a new sentence, thereby putting an end to judicial labor. See, e.g., State v. Delvalle, 745 So.2d 541, 542 (Fla. 4th DCA 1999); Pate v. State, 908 So.2d 613, 614 (Fla. 2d DCA 2005); Adams v. State, 949 So.2d 1125, 1126-27 (Fla. 3d DCA 2007).
Finally, to the extent that Judge Pryor is suggesting that we are in some way trying to undermine AEDPA, such an accusation is as disappointing as it is wrong. As the Seventh Circuit recently noted, see Kramer v. United States, 797 F.3d 493, 502 (7th Cir.2015), reasonable jurists can disagree about what constitutes a new judgment under Magwood. We have tried to faithfully apply AEDPA and Magwood in light of binding circuit precedent, and that binding circuit precedent is Insig-nares. We believe we have accomplished that task, Judge Pryor’s protests notwithstanding.
HI
We reverse the dismissal of Mr. Patterson’s habeas corpus petition as second or successive and remand for further proceedings consistent with this opinion. We express no views on Mr. Patterson’s claims.
Reversed and remanded.

. Imagine a scenario where a Florida state court sentences a defendant convicted of fraud to 10 years in prison at hard labor. After being forced to do hard labor for a year, the defendant files a Rule 3.800 motion to correct an illegal sentence, arguing that the hard labor portion of the original sentence violates the Eighth Amendment. The state trial court agrees, and issues an order deleting the hard labor aspect of the initial sentence and telling the prison authorities that they can no longer require the defendant to perform hard labor. Although the state trial court does not enter a new separate judgment without the hard labor condition, its order deleting that punitive condition is, a resen-tencing which constitutes a new judgment under Magwood and Insignares.

. The Fifth Circuit also reached this result based upon its own circuit precedent, which it concluded did not require the district court to enter a new judgment as to the remaining counts in a multi-count conviction after one of the counts was vacated. See Lampton, 667 F.3d at 588-89 ("It has long been the law of this Circuit that where a defendant has been improperly convicted of and sentenced on both a greater offense and a lesser-included offense, 'the proper remedy is to vacate both the conviction and sentence on the included- *893 offense, leaving the conviction and sentence on the greater offense intact.’ Thus, when a first habeas petition results in vacatur of the conviction and sentence associated with one count of a multi-count conviction, the district court is not required to enter a new judgment as to the remaining counts. Those convictions and sentences, as well as the judgment imposing them, remain undisturbed.”). That scenario is not presented here.

. If we are mistaken, and Lampton is inconsistent (or in tension) with Insignares, our loyalty, of course, is to Insignares rather than Lampton.